UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL P.,

                        Plaintiff,                          **DECISION AND ORDER**

     v.
                                                       6:20-cv-06695-EAW

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Michael P. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 15; Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 15) is denied and the Commissioner's motion (Dkt. 16) is granted.

## BACKGROUND

Plaintiff protectively filed his applications on April 13, 2017.  (Dkt. 13 at 61, 72, 164-65).[1]  In his applications, Plaintiff alleged disability beginning January 1, 2013.  (*Id.* at 62, 73, 164).  Plaintiff's applications were initially denied on August 16, 2017.  (*Id.* at 62-71, 73-82).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Michael W. Devlin on May 7, 2019.  (*Id.* at 37-60).  On June 26, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 17-29).  Plaintiff then requested review by the Appeals Council, which the Council denied on July 13, 2020, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 6-10).

## LEGAL STANDARD

## I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).[2]  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

---

[2]      Because the DIB and SSI regulations mirror each other, the Court only cites the SSI regulations.  *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).  The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis and determined that Plaintiff met the insured status requirements of the Act through December 30, 2018.  (Dkt. 13 at 19).  He also determined that Plaintiff had

not engaged in substantial gainful work activity since January 1, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: sciatica, asthma, major depressive disorder, generalized anxiety disorder, and social anxiety disorder. (*Id.* at 20). The ALJ also determined that Plaintiff's right knee and the left hand pain, gastroesophageal reflux disease, attention deficit hyperactivity disorder, as well as neck pain and stiffness, were non-severe impairments. (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 20-23). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work, except that he could frequently climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds while avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. (*Id.*). The ALJ also determined that Plaintiff could understand, remember, and carry out simple instructions and tasks, maintain concentration and focus for up to two hours at a time, occasionally interact with co-workers and supervisors, but have little to no contact with the general public. (*Id.*).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.* at 27). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the occupations of garment sorter, mail clerk, and laundry sorter. (*Id.*

at 28).   Accordingly, the ALJ found that Plaintiff was not disabled from the date of his

applications through the date of the ALJ's decision.  (*Id.* at 29).

## II.     <u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error</u>

Plaintiff advances several arguments and asks this Court to reverse, or, in the

alternative, remand this matter to the Commissioner for further proceedings because the

ALJ improperly relied on the stale opinion of a consultative examiner to formulate

Plaintiff's physical RFC and formulated his mental RFC based on his lay interpretation of

the medical record.  (Dkt. 15-1 at 12-17).   The Court disagrees for the following reasons.

### A.  <u>The ALJ Did Not Rely on a Stale Opinion to Formulate Plaintiff's Physical RFC</u>

Generally, a stale medical opinion does not constitute substantial evidence that an

ALJ can rely on in making a disability determination.  *See Camille v. Colvin*, 104 F. Supp.

3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (internal citation

omitted).   However, the mere passage of time does not render an opinion stale unless it

fails to recognize evidence of substantial deterioration of a claimant's condition.  *See Cruz*

*v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965(MAT), 2018 WL 3628253, *6 (W.D.N.Y.

July 31, 2018) ("A consultative examination is not stale simply because time has passed,

in the absence of evidence of a meaningful chan[ge] in the claimant's condition.").

Accordingly, an older opinion may constitute substantial evidence if the ALJ finds it to be

consistent with the record.  *See Biro v. Comm'r of Soc. Sec.*, No. 6:17-CV-6098 EAW,

2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018) ("[A] medical opinion is not

necessarily stale simply based on its age.  A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.").

Plaintiff takes issue with the ALJ's reliance on the opinion of consultative examiner Harbinder Toor, M.D. ("Dr. Toor") that was issued prior to Plaintiff suffering injuries as a result of two motor vehicle accidents that he was involved in during pendency of his claims. (Dkt. 15-1 at 12-14).  Indeed, on June 8, 2017, Plaintiff underwent a physical examination by Dr. Toor, during which he complained about having history of pain and weakness in his lower back that he had experienced for two years prior to the examination.  (Dkt. 13 at 281).  Despite his complaints, Plaintiff demonstrated normal cervical and thoracic spine with full flexion, extension, rotary movement, and no scoliosis, kyphosis, or other abnormalities, but also showed slight tenderness in the lumbar spine, which caused some restricted movement in all directions.  (*Id.* at 283).  Aside from that, Plaintiff had negative single leg raise, full range of motion in his shoulders, elbows, forearms, and wrists, as well hips, knees, and ankles.  (*Id.*).  Following the examination, Dr. Toor opined that Plaintiff had mild to moderate limitations in standing, walking, bending, and lifting because of his back pain, and should avoid irritants that could exacerbate his asthma.  (*Id.*).

The record also demonstrates that Plaintiff was involved in two motor vehicles accidents—one on October 19, 2018, and the second one on March 9, 2019.  (*Id.* at 465, 541, 591).  During the October accident, Plaintiff was a back seat passenger of a taxicab that was struck by another vehicle.  Immediately following the accident, Plaintiff declined transfer to the hospital because he did not have any pain or discomfort as a result of the accident.  (*Id.* at 465).  Two days later, Plaintiff saw his primary care physician Stephen

Lurie, M.D. ("Dr. Lurie") for complaints of pain and tightness in the back of his neck and shoulders that he developed after the accident. (*Id*. at 465-66). During the examination, Plaintiff had a significant spasm of the strap muscles of his neck and shoulders, for which Dr. Lurie prescribed a muscle relaxant medication. (*Id.* at 466). He also noted that Plaintiff's discomfort would not last longer than several weeks. (*Id*.).

Plaintiff's subsequent treatment records demonstrate that he visited Dr. Lurie for complaints of tooth, back, and neck pain, as well as gastroesophageal reflux (GERD), and that Dr. Lurie assessed him with GERD, generalized anxiety disorder, and chronic bilateral low back pain with sciatica, and prescribed medication to treat his anxiety and GERD. (*Id*. at 460-64). As for Plaintiff's complaints of back and neck pain, Dr. Lurie's treatment notes were silent as to any objective evidence supporting Plaintiff's complaints. In fact, Dr. Lurie neither assessed Plaintiff with any neck impairment, nor renewed his muscle relaxant medication that Plaintiff was prescribed shortly after the car accident. (*Id*. at 460-61). Instead, Dr. Lurie advised Plaintiff to continue chiropractic treatment for his lower back pain, which, according to Plaintiff, had been very helpful in considerably improving his symptoms. (*Id*.). Notably, Dr. Luris's minimal findings related to Plaintiff's neck were supported by the subsequent MRI of Plaintiff's cervical spine performed in January 2019, which demonstrated minimal disc desiccation and small bulges at C4-5 and C5-6 levels without significant central stenosis, or foraminal encroachment. (*Id*. at 608).

Plaintiff was involved in the second accident on March 9, 2019, when he jumped out of the way of a truck and was "almost struck by a car." (*Id*. at 541, 591). Importantly, Plaintiff was not hit by the car, nor did he fall or lose his balance, or sustain any trauma as

a result of the accident. (*Id*. at 543, 591). Four days later, he was admitted to the emergency department for complaints of low back pain with mild tingling electrical sensation that radiated down his left buttocks. Upon examination, Plaintiff demonstrated tenderness in his left paraspinal and SI joint, positive straight leg raise, as well as full strength in all extremities and no tenderness in his lumbar spine. (*Id*. at 543-44). Plaintiff was assessed with lumbar radiculopathy of the sciatic nature—the finding that was supported by x-rays taken at that time, which demonstrated early degenerative changes with mild disc space narrowing in Plaintiff's lower spine without any acute fracture, subluxation, or abnormalities, symmetric sacroiliac joints, and grossly unremarkable lower lumbar spine. (*Id*. at 563-64). Plaintiff was discharged the same day with a prescription for over-the-counter pain and anti-inflammatory medication, as well as a muscle relaxant. (*Id*.). A few days later, Plaintiff visited Dr. Lurie with complaints of back pain that radiated to the front of his left leg causing numbness in his shin and requested the refill of the medication he was prescribed at the time of his discharge from the hospital. (*Id*. at 591). During the examination, Plaintiff demonstrated full range of motion in his lumbar spine, negative straight leg raises, normal reflexes and normal gait, as well as significant tenderness over the left of the lumbar spine. (*Id*.). Following the examination, Dr. Lurie renewed Plaintiff's pain and muscle relaxant medications, and referred him to physical therapy again, which, according to Plaintiff, had been helpful in relieving his symptoms in the past. (*Id*. at 591-92).

The record does not support Plaintiff's conclusions that his neck and back impairments significantly deteriorated following either of the accidents ultimately making

Dr. Toor's opinion stale. *See Annette M. v. Comm'r of Soc. Sec.*, No. 19-CV-6845S, 2021 WL 248012, at *5 (W.D.N.Y. Jan. 26, 2021) (the consultative opinion was not stale because no evidence suggesting that plaintiff's condition worsened was presented). Instead, the record reveals that following the accidents, Plaintiff did not sustain any severe injuries related to his neck or lumbar back, which was demonstrated by his physical examinations, conservative treatment of his symptoms, as well as the results of electromagnetic imagining, which showed generally unremarkable findings consistent with his impairments. *See Schneider v. Comm'r of Soc. Sec.*, No. 19-CV-290S, 2020 WL 3096979, at *4 (W.D.N.Y. June 11, 2020) (the opinion of the consultative examiner was not stale when the record did not show a worsening of plaintiff's condition where his examinations were normal and consistent with "stable disease course").

The record demonstrates that Dr. Toor's opinion, despite its age, was consistent with the record of Plaintiff's physical impairments, and, as a result, was properly found to be persuasive by the ALJ. Specifically, it was consistent with the findings of Dr. Lurie, who repeatedly observed Plaintiff having negative straight leg raises, normal reflexes and gait, and noted Plaintiff's full range of motion in his lumbar back—a finding that was less restrictive than the one made by Dr. Toor. (*Id.* at 484, 487). Even though Plaintiff complained about having multiple episodes of back pain per week, knee pain, and sharp shooting pain in his elbow, Dr. Lurie did not believe that additional diagnosis or evaluation of Plaintiff's back pain symptoms was warranted. Instead, he recommended that Plaintiff continue physical therapy for his knee and use soft ulnar pad to relieve his elbow pain, which was caused by hours of computer gaming that Plaintiff was engaged in on a daily

basis.  (*Id*. at 485, 473, 476).  Notably, in response to Plaintiff's request to have him fill out Plaintiff's disability forms, Dr. Lurie stated that the nature of Plaintiff's disability was unclear to him.  (*Id*. at 467).  Although the ultimate determination of disability is reserved to the Commissioner, *see* 20 C.F.R. § 416.920b(c), Dr. Lurie's comments were noteworthy because they represented an evaluation of Plaintiff's alleged impairments based on his treatment history with Plaintiff.  In fact, he could not confidently attribute a medical diagnosis to Plaintiff's difficulties and recommended that Plaintiff pursue physical therapy and develop a long-term goal of looking for a job or job retraining because there was no significant medical pathology that would preclude Plaintiff's rehabilitation and ultimate return to work.  (*Id*. at 467-68, 500).  Dr. Lurie also indicated that despite Plaintiff's complaints of regular back pain, he could continue to pursue work with the limited bending and lifting.  (*Id*. at 500).  *See also Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (An opinion that plaintiff "would be 'unlikely' to work full time was not a conclusory statement . . . [reserved to the Commissioner], but instead an assessment, based on objective medical evidence, of [plaintiff's] likelihood of being able to sustain full time employment given the many medical and mental impairments [plaintiff] faces and her inability to afford treatment for those conditions."); *Michael M. v. Saul*, No. 18 C 6718, 2020 WL 374682, at *6 (N.D. Ill. Jan. 23, 2020) (a medical source's opinion about claimant's ability to walk or sit "is not a finding of disability; rather, it constitutes an evaluation of the severity of [c]laimant's impairment based on the treating physician's expert observations.").

Accordingly, because the record does not show the deterioration of Plaintiff's symptoms following Dr. Toor's examination, the ALJ's reliance on Dr. Toor's opinion in

formulating Plaintiff's physical RFC was proper.  *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (finding that ALJ did not err by relying on older opinions where no evidence of significant deterioration in the plaintiff's condition was demonstrated).

B. <u>The ALJ's Mental RFC is Supported by Substantial Evidence</u>

Plaintiff also argues that the ALJ's mental RFC determination was flawed because the ALJ did not base his finding on any medical opinion, and, instead, formulated Plaintiff's mental RFC based on his own lay interpretation of opinion evidence.  (Dkt. 15-1 at 14-17).  The Court finds this argument without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id*. Additionally, it has been well-decided that the ALJ may "choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citation omitted), and is free to reject portions of a medical opinion that are not supported by objective evidence of record, while accepting those portions that are supported by the record.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Moreover, an ALJ may formulate an RFC absent any medical opinion.  "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]"  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation

- 12 -

omitted); *see also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'") (internal citations omitted).

Plaintiff argues that the ALJ relied on his lay opinion to formulate Plaintiff's mental RFC because he did not find any medical opinion addressing his mental functioning persuasive. (Dkt. 15-1 at 15-16). Indeed, in arriving at Plaintiff's RFC, the ALJ considered two opinions of record that assessed Plaintiff's mental functioning—one issued by consultative examiner Todd Deneen, Psy.D. ("Dr. Deneen"), and the second one rendered by the state agency reviewer M. Momot-Baker, Ph.D. (Dkt. 13 at 25-26). The ALJ found both opinions unpersuasive because the physicians' findings were not supported by the record. (Dkt. 13 at 25-26). The Court does not find any reason to disturb the ALJ's determination.

As an initial matter, both opinions were the type of medical assessments that the ALJ was allowed to consider in his analysis of Plaintiff's mental impairments. *See* 20 C.F.R. § 416.920c(a) and (b). The ALJ analyzed their consistency and supportability, and ultimately found them to be unpersuasive because the record did not support both physicians' conclusions that Plaintiff's mental limitations were non-severe and did not warrant various non-exertional limitations. (Dkt. 13 at 26). Despite disregarding their ultimate determinations, the ALJ took into account their findings and assessed a more restrictive RFC because the other evidence in the record that supported a conclusion that

Plaintiff's mental impairments were, in fact, severe and required additional non-exertional limitations. This does not equate to the ALJ formulating Plaintiff's RFC based on his own "creation" as Plaintiff's suggests. (Dkt. 17 at 3). Instead, this was precisely the type of analysis the ALJ was required to engage in to determine persuasiveness of both opinions. 20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision"); *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (ALJ did not err by failing to adopt consultative examining physician's conclusions in determining the claimant's RFC where the physician's findings were inconsistent with other contemporaneous medical records).

Based on his review of the record, the ALJ determined that Plaintiff's major depressive disorder, generalized anxiety, and social anxiety disorders were severe impairments requiring several non-exertional limitations, particularly those related to his limited ability to interact with others, and maintain concentration and focus during his workday for up to two hours at a time. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (the ALJ did not error by deviating from consultative examiners' recommendations to decrease plaintiff's RFC based on other evidence in the record). This departure from the findings of Dr. Deneen, who opined that Plaintiff had no limitations in his ability to understand, remember, and apply simple and complex directions and instructions, use reason and judgment, interact with supervisors, co-workers, and the public, and sustain concentration and an ordinary routine, as well as the findings of Dr. Momot-Baker, who opined that Plaintiff's impairments were not severe, was justified in

light of the record of Plaintiff's fluctuating symptoms that interfered with his ability to function.   Specifically, the ALJ's findings were consistent with the record that demonstrated that Plaintiff at times reported fluctuating mood and energy levels, good days and bad days, decreased motivation, isolation, sad, anxious, angry, and depressed mood and affect, fear of being around others and social anxiety, poor energy and concentration, while at other times reported normal mood, logical thought process and concentration, intact memory and attention, fair judgment, cooperative demeanor, socializing with his family and friends, positive response to therapy and medication, which significantly improved his anxiety, mood, optimism, and energy level.  (Dkt. 13 at 259, 262, 269, 276, 280, 288, 306-07, 314, 316-18, 319-23, 326-28, 331-32, 337-38, 342, 347, 350, 355, 357, 359, 361, 470, 475, 481, 487, 630-31, 658-59).  Even though Plaintiff testified that he left work in 2013 due to anxiety, he subsequently reported receiving significant relief from anxiety and depression with the help of several medications and even admitted that he no longer needed to see a psychiatrist at some point during treatment.  (*Id*. at 41, 472-43, 481, 487, 499); *see Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (it is proper for an ALJ to consider a claimant's conservative treatment history to support his conclusion that he or she is not disabled).  Plaintiff was clinically stable, repeatedly noted that he struggled with boredom, spent his days gambling online or working on his YouTube channel, and despite testifying about struggling with social isolation, went out with friends and engaged romantically with two females.  (*Id*. at 314-15, 319-21, 324); *see Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (the ALJ properly did not credit plaintiff's subjective

complaints of limiting effects of his impairments when his testimony was not supported by the objective medical evidence and daily activities).

Accordingly, taking into consideration the entire record, the ALJ properly limited Plaintiff to performing simple tasks with occasional interaction with co-workers and supervisors, little to no contact with the public, as well as limited concentration and focus up to two hours at a time. *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (an ALJ can look to all of the relevant medical and other evidence, including relevant medical reports, medical history, and a claimant's statements when assessing the RFC); *Reilly v. Colvin*, No. 1:13-CV-00785 (MAT), 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[A] limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning." (collecting cases)).

In sum, Plaintiff's challenge amounts to a disagreement with the ALJ's findings. While he may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)).  It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff failed his duty to prove a more restrictive RFC).  Plaintiff presented

no medical evidence of functional limitations greater than those found by the ALJ. For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet his burden of a more restrictive RFC. As a result, the RFC determination is supported by substantial evidence. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        January 3, 2023
              Rochester, New York